**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| JOSEPH ARUANNO, Plaintiff, | : | Civil Action No. 07-2056 (DMC) |
| v. | : | **OPINION** |
| TINA SPAGNUOLO, et al., Defendants. | : | |

**APPEARANCES:**

JOSEPH ARUANNO, Plaintiff pro se
Special Treatment Unit
Kearny, New Jersey 07032

**CAVANAUGH**, District Judge

Plaintiff JOSEPH ARUANNO ("Plaintiff"), a civilly-committed person confined at the Special Treatment Unit ("STU") in Kearney, New Jersey, pursuant to the New Jersey Sexually Violent Predators Act ("SVPA"), N.J.S.A. 30:4-21.1, et seq., seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Based on his affidavit of indigence, the Court will grant plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a)(1) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B), to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim

upon which relief may be granted, or because it seeks monetary relief from defendants who are immune from such relief.

BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff is civilly committed pursuant to the SVPA. He claims that on or about May 1, 2006, "Ms. Tina Spagnuolo, social worker, came to [Plaintiff] and said she was taking [away Plaintiff's privileges as to his] job, TV, stereo [and other privileges] for not confessing to a crime [in spite of Plaintiff's] right to remain silent as guaranteed by the [Fifth] Amendment."[1] Compl. at 4. It appears that plaintiff is asserting a violation of his Fifth Amendment right against compelled self-incrimination and violations of his First Amendment rights not to be forced to participate in treatment, or be subject to retaliatory punishment for the exercise of his First and Fifth Amendment rights (right to refuse treatment and right against compelled self incrimination). See id.

1 The Court construes Plaintiff's statement as indicating that the STU staff (1) placed Plaintiff on "treatment refusal status" with a loss of privileges because Plaintiff refused to give self-incriminating statements during treatment sessions; and/or (2) was coercing him to make self-incriminating statements by denying him privileges while confined at STU.

Plaintiff brings this action against numerous defendants as follows: the New Jersey Department of Human Services ("DHS"); the New Jersey Department of Corrections ("DOC"); Merrill Main (presumably, Merrill Main, Director at the STU Annex); Tina Spagnuolo (presumably, Tina Spagnuolo, Unit Director at STU Annex); Lou Norton (presumably, Lou Norton, Vocational Rehabilitation Counselor); and "Ms. Kearny," the holder of the title unspecified by Plaintiff and undetectable by this Court.

In addition to damages in excess of $1 million from each defendant, Plaintiff asks that he be restored back to the position he occupied before Defendants began their conduct and policy of compelling plaintiff's self-incrimination.

STANDARDS FOR A SUA SPONTE DISMISSAL

The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all

reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981). However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim but lacked sufficient detail to function as a guide to discovery was not required to be dismissed for failure to state a claim; district

court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

## SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights guaranteed under the United States Constitution. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48

(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Moreover, the Eleventh Amendment to the United States Constitution provides that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."

As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute. See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974). The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought. Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984); see also Will v. Michigan Dept. of State Police, 491 U.S. 58, 64, 70-71 and n.10 (1989)(neither states, nor governmental entities that are considered arms of the state for Eleventh Amendment purposes, nor state officers sued in their official capacities for money damages are persons within the meaning of § 1983). Thus, Section 1983 does not override a state's Eleventh Amendment immunity. Quern v. Jordan, 440 U.S. 332 (1979).

Therefore, the Complaint will be dismissed in its entirety against the state agency Defendants, the Department of Human Services and the Department of Corrections.

## ANALYSIS

### A. Retaliation Claim

A confined person alleging that prison officials have retaliated against him for exercising his constitutional rights must prove: (1) that the conduct which caused the retaliation was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take adverse action. See Carter v. McGrady, 292 F.3d 152, 157 (3d Cir. 2002) Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001); Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000). Once a confined person shows initially that his protected activity was a substantial or motivating factor in the challenged decision, the burden shifts to prison officials "to prove by a preponderance of the evidence that [they] would have taken the same disciplinary [or other] action even in the absence of the protected activity." Rauser, 241 F.3d at 333. Therefore, this Court should determine whether Plaintiff's actions amounted to a protected activity under either the First or the Fifth Amendment.

B. First Amendment Claim

Plaintiff basically asserts that Defendants have tried to force him to participate in SVPA treatment sessions in violation of his constitutional rights. He appears to argue that Defendants have retaliated against (by giving him "treatment refusal status") for refusing to vocally participate (by giving self-incriminating statements) in the treatment program at the STU by revoking certain privileges, including the loss of television, his institutional job, and other privileged items. If so, it also appears that the ensuing Plaintiff's "treatment refusal status" impedes his advancement or progression in treatment, which may be used against him at his re-commitment hearings as an indication that Plaintiff is not sufficiently rehabilitated to re-enter society.[2]

---

[2]

In M.X.L. v. New Jersey Dep't of Human Services/New Jersey Dep't of Corrections, 379 N.J. Super. 37 (App. Div. 2005), the New Jersey Appellate Division discussed the treatment program administered at the STU and its goals:

> Decisions regarding the treatment program at the STU are based on judgments exercised by qualified professionals. Youngberg v. Romero, [457 U.S. 307, 322 (1982)]. In administering the clinical treatment program at STU, the emphasis is on stabilizing disruptive or dangerous behaviors. The STU Program is designed to enhance behavioral stability and pro-social functioning. Those residents whose internal behavior controls deteriorate such that they pose a threat or danger to themselves, other residents and/or STU staff are subject to increased external controls and reduction of privileges. ...
>
> If the State were required to provide the same prerequisites to those who are non-compliant with the treatment program, as are given to those who are participating in the program and demonstrating continued appropriate behavior, "the result would be a dramatic illustration that obduracy has the same

At this preliminary stage, the Court deems Plaintiff's refusal to speak a protected activity under the First Amendment, and will allow this claim to proceed since it appears that the stakes for Plaintiff's participation in treatment are so high and the deprivations incurred by refusing to participate in treatment, namely, a likely impediment to any consideration for eventual release during re-commitment proceedings, may rise to the level of compulsion that might violate the First Amendment. See Hydrick v. Hunter, 466 F.3d 676 (9th Cir. 2006)(discussing the volatility of this issue, *i.e.*, whether the right to refuse participation in such treatment is clearly established under the First Amendment); Wolfe v. Penn. Dep't of Corrections, 334 F. Supp.2d 762 (E.D.Pa. 2004)(allowing an inmate to proceed past pre-trial motions on First Amendment grounds where the right to parole was conditioned on participation in treatment). But see Thorpe v. Grillo, 80 Fed. Appx. 215, 217-19, 2003 WL 22477890 (3d Cir. 2003)(unpubl.)(a non-precedential opinion where the Third Circuit found (1) no constitutional right to parole thereby foreclosing the Fourteenth Amendment due process claim, and (2) no Fifth Amendment self-incrimination violation because the inmate was not automatically

---

> rewards as acceptance, and so the program itself would become self-defeating, even hypocritical in the eyes of those whom it seeks to help." McKune v. Lile, [536 U.S. 24, 48 (2002)].

M.X.L., 379 N.J. Super. at 875-76.

denied consideration for parole and was not forced to incriminate himself at trial), cert. denied, 542 U.S. 924 (2004).

C. The Privilege Against Self-Incrimination

Plaintiff also clearly asserts a violation of his Fifth Amendment right against compelled self-incrimination. The Self-Incrimination Clause of the Fifth Amendment to the U.S. Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." The Self-Incrimination Clause applies to the States through the Fourteenth Amendment. Malloy v. Hogan, 378 U.S. 1, 6 (1964). The Clause speaks of "compulsion," United States v. Monia, 317 U.S. 424, 427 (1943), and the U.S. Supreme Court has emphasized that the "constitutional guarantee is only that the witness not be compelled to give self-incriminating testimony." United States v. Washington, 431 U.S. 181, 188 (1977).

In McKune v. Lile, 536 U.S. 24 (2002), a sharply-divided Supreme Court held that the Fifth Amendment right against compelled self-incrimination is not violated by a prison sexual-abuse treatment program which imposes loss of various prison privileges for failure to participate in a counseling program that requires the inmates to complete an unprivileged sexual history form which details all prior sexual activities, regardless of whether such activities constitute uncharged criminal offenses. In upholding

the constitutionality of the treatment program, both the plurality and the concurring Justices noted that failure to participate did not affect eligibility for good time credits or parole. See 537 U.S. at 38 (Kennedy, J., plurality opinion); 537 U.S. at 52-53 (O'Connor, J., concurring).

Relying upon McKune, the Superior Court of New Jersey, Appellate Division, invalidated a New Jersey statute[3] to the extent it permitted good time credits to be withheld or revoked based upon a prisoner's refusal to disclose information about past events for which he could face subsequent prosecution. Bender v. New Jersey Dept. of Corrections, 356 N.J. Super. 432 (App. Div. 2003). One year later, the Appellate Division expanded upon Bender, holding that a prisoner retains his privilege against self-incrimination until he has exhausted the direct appeal process from his criminal conviction, that a prisoner is not required to discuss the crimes for which he was convicted until his petition for certification is denied by the Supreme Court of New Jersey, and that good time credits may not be withheld or revoked based upon the refusal to

---

[3] N.J.S.A. 2C:47-8 provides, in pertinent part:

> a term of imprisonment imposed on a person confined to the Adult Diagnostic and Treatment Center ... shall not be reduced by progressive time credits or credits for diligent application to work and other institutional assignments for any year or fractional part of a year if the person failed to fully cooperate with all treatment offered to him during that time period.

disclose information about the crime of conviction until the direct appeals are exhausted. Lewis v. Dept. of Corrections, 365 N.J. Super. 503 (App. Div. 2004).

In Chavez v. Martinez, 538 U.S. 760 (2003), the Supreme Court indicated that violations of the prophylactic rules safeguarding the right against compelled self-incrimination do not amount to actual constitutional violations as required for civil liability under § 1983. See also Renda v. King, 347 F.3d 550, 559 (3d Cir. 2003)(stating that "it is the use of coerced statements during a criminal trial ... that violates the Constitution")(citations omitted).

As noted above, the Court of Appeals for the Third Circuit, has held in a non-precedential opinion that there is no Fifth Amendment violation in forcing a prisoner to choose between maintaining his innocence (with respect to the crime of which he was convicted) and participating in a treatment program necessary for parole recommendation. See Thorpe v. Grillo, 80 Fed.Appx. 215, 2003 WL 22477890 (3d Cir. 2003) (unpubl.), cert. denied, 542 U.S. 924 (2004).[4]

---

[4] The Circuit Courts have taken a range of positions with respect to the issue whether the Self-Incrimination Clause is violated by loss of eligibility for good time credits or parole based upon failure to admit either the crime of conviction or, in connection with a rehabilitation program, uncharged sexual conduct which may be criminal. See, e.g., Searcy v. Simmons, 299 F.3d 1220 (10th Cir. 2002) (where there is no liberty interest in good time credits, loss of eligibility for good-time credits as a consequence of refusing to admit crime of conviction does not violate Self-

The Fifth Amendment right against self-incrimination remains available to a prisoner despite his conviction. See Minnesota v. Murphy, 465 U.S. 420, 426 (1984). However, "[i]t is well established that the privilege protects against real dangers, not remote and speculative possibilities." Zicarelli v. New Jersey State Commission of Investigation, 406 U.S. 472, 478 (1972). "The central standard for the privilege's application has been whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." Marchetti v. United States, 390 U.S. 39, 53 (1968) (citations omitted). Thus, "when a witness can demonstrate a fear of prosecution, which is more than fanciful or merely speculative, he has a claim of

---

Incrimination Clause); Ainsworth v. Stanley, 317 F.3d 1 (1st Cir. 2002), cert. denied, 538 U.S. 999 (2003) (voluntary sexual offender treatment program which requires participant to admit crime and divulge other offenses does not violate Self-Incrimination Clause, even though non-participation results in denial of parole); Vinson v. Michigan Parole Board, 2006 WL 305653 (E.D. Mich. 2006) (parole board's consideration of prisoner's refusal to accept responsibility for his crime does not violate Self-Incrimination Clause); Sullivan v. Pennsylvania Bd. of Probation and Parole, 2006 WL 1050526 (W.D. Pa. 2006) (where there is no liberty interest in parole, no Fifth Amendment violation from adverse parole decision based upon refusal to admit to crime of conviction or other potentially criminal behavior); Donhauser v. Goord, 314 F. Supp.2d 119, 127 (N.D.N.Y. 2004) ("requiring plaintiff as part of the [sexual offender counseling program] to divulge a history of sexual conduct, including illegal acts for which no criminal charges have been brought, or else face a loss of good time credits, violates his Fifth Amendment privilege against self-incrimination"); Boddie v. New York State Division of Parole, 288 F. Supp.2d 431 (S.D.N.Y. 2003) (Fifth Amendment does not prohibit parole authorities from drawing an adverse inference from an inmate's refusal to answer questions regarding the crime of conviction).

privilege that meets constitutional muster." In re Corrugated Container Antitrust Litigation, 662 F.2d 875, 883 (D.C.Cir.1981) (citing In re Folding Carton Antitrust Litigation, 609 F.2d 867, 871 (7th Cir.1979)).

Here, Plaintiff is a civilly committed person and not an inmate anticipating parole. However, the Court finds this distinction to be immaterial in plaintiff's Fifth Amendment claim because there does not appear to be any "real" possibility that Plaintiff could be subject to future prosecution for admitting his responsibility for the crimes of which he was convicted and has already served his time in prison. See, e.g., Neal v. Shimoda, 131 F.3d 818, 833 (9th Cir. 1997) (where double jeopardy considerations would preclude use of admission in any future prosecution, possibility of incrimination from admission that prisoner committed the crime of conviction is no more than a "remote and speculative possibility" insufficient to trigger Fifth Amendment protection); Lewis, 365 N.J. Super. at 507 (where direct appeals are exhausted, prisoner no longer has a Fifth Amendment privilege to refuse to answer questions about the crime of conviction).

Accordingly, the possibility that Plaintiff's admissions during his treatment program could lead to further prosecution is "remote and speculative." Therefore, this Court concludes that Plaintiff no longer has a Fifth Amendment privilege against answering questions about the crime of conviction for which he has

already completed his term of imprisonment and, therefore, Plaintiff's actions do not constitute a protected activity within the meaning of the Fifth Amendment. Cf. Rice v. Michigan Parole Board, 2005 WL 2297463 (W.D. Mich. Sept. 21, 2005) (where no appeals or post-conviction relief proceedings remain pending, possibility of any admission to crime of conviction incriminating prisoner in the future "is no more than a remote and speculative possibility, which is insufficient to trigger the Fifth Amendment's protection against self-incrimination"). Consequently, this claim will be dismissed.[5]

[5] Should Plaintiff be able to establish that any admission to the crimes of conviction otherwise would subject him to a real possibility of prosecution, he may make an application to amend his Complaint accordingly. Cf., e.g., Thomas v. Independence Township, 2006 WL 2621094 (3d Cir. 2006) ("Even when a defendant does not formally move for a more definite statement, the district court has the discretion to demand more specific factual allegations in order to protect the substance of the qualified immunity defense and avoid subjecting government officials who may be immune from suit to needless discovery and the other burdens of litigation."). Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]." 6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. Id. To avoid confusion, the safer course is to file an amended complaint that is complete in itself. Id.

CONCLUSION

For the reasons set forth above, the Complaint will be dismissed in its entirety, pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii), as against Defendants the Department of Human Services and the Department of Corrections because they are immune from liability under the Eleventh Amendment. As to the remaining defendants, the Court will dismiss the Fifth Amendment claim asserting a violation of Plaintiff's right against compelled self-incrimination because Plaintiff fails to state a claim; however, the Court will allow the First Amendment claims to proceed at this time.

An appropriate order follows.

DENNIS M. CAVANAUGH
United States District Judge

Dated: 5/15/07